Good morning, Your Honors. Kimberly Miller on behalf of Petitioner Javier Baeza-Castro. With me also is Alan Lanstra. We are Court-Appointed Pro Bono Counsel for Petitioner. I'd like to reserve three minutes for rebuttal, please. Sure. Your Honors, in reviewing this case, there are at least three grounds for reversing the Board's decisions denying Mr. Baeza's motions to reopen. First, Mr. Baeza has had the misfortune of hiring three attorneys who have provided ineffective assistance at each stage of his case. These attorneys have violated Mr. Baeza's due process rights, yet the Board has denied his motions to reopen on procedural grounds, without ever adjudicating the merits of his underlying claims. Second, because, as even the Board effectively concedes, ineffective assistance is clear on the face of the record here, it was an abusive discretion to deny Mr. Baeza's motions to reopen for his purported failure to strictly comply with the Lozada requirements. Finally, because Mr. Baeza has diligently pursued his claims, it was an abusive discretion for the Board to refuse to equitably toll the filing deadline and numerical limits on his motions to reopen. I'll address the equitable tolling arguments first. Can I just ask a question? Was the violation for Cal Health and Safety Code, Section 11379A, was that an aggravated felony? No, it was not, Your Honor. Okay. To determine whether Mr. Baeza exercised due diligence, the Court examines three factors. First, whether and when a reasonable person in Mr. Baeza's position would suspect the specific fraud or error underlying his motion to reopen. Second, whether Mr. Baeza took reasonable steps to investigate the suspected error, or if he was ignorant of counsel's shortcomings, made reasonable efforts to pursue relief. Under this factor, typically an alien is considered diligent, so long as they have continued to pursue relief and relied on advice of counsel regarding the means of obtaining it. Finally, the Court must assess when the tolling period should end. That is, when Mr. Baeza definitively learned of the harm resulting from his prior counsel's deficiency or obtained vital information bearing on his claim. In many cases, such as this case, this occurs when the alien obtains a complete record of his immigration proceedings and is able to review that information with competent counsel. Let me ask you this. In February of 2007, there was a hearing for the IJ when the first lawyer, was it Dorento, is that his name? Dipento. Dipento, I beg your pardon. Dipento didn't file an application for cancellation in time. Mr. Baeza was there and knew all about that, right? Am I right about that? You are. Okay, so what excuses his not complaining about that sooner? This is back in 2007. Yes, Your Honor. The record before the Board reveals that Mr. Baeza was aware that Attorney Dipento had made a big mistake by not filing the application. However, he was not aware that this amounted to ineffective assistance of counsel. The record reveals that he was not aware of that fact until March of 2011 when he was so advised by Attorney Percy. How do we know he didn't know it back then? That back in 2007, the judge says, I'm not going to consider your thing because it's late. How do we know Mr. Baeza didn't know it then, didn't understand its significance? Well, because the record is uncontested on this point that while he was aware that it was an error, certainly an error, a mistake, not to file timely, that he wasn't aware that this rose to ineffective assistance of counsel until March of 2011. Now, moreover, Your Honor, Mr. Baeza timely appealed the decision of the immigration judge and retained new counsel, Attorney Hanna. That attorney missed this very issue on his appeal. Now, surely a reasonable person in Mr. Baeza's position, that is, an alien petitioner, English second language with a high school education, is not to be held to a higher standard than his attorney, Ms. Hanna, an immigration specialist who missed this very issue on appeal. So under the circumstances, Your Honor, I think that in light of the fact that it's uncontested, though he was aware it was a mistake, he was not aware that Dipento's failures rose to the level of ineffective assistance of counsel. And the second factor under the equitable tolling analysis is whether Mr. Baeza continued to pursue relief and relied on advice of counsel as to the means of obtaining that relief. Can you direct me to the record? I'm having a hard time finding this. You say he knew that his lawyer screwed up in February of 2007. Yes. But he didn't know that it rose to the level of ineffective assistance of counsel. Yes, Your Honor. That is contained in the supporting affidavit filed with his first motion to reopen. In the record of the case in matter 11-72520, it's contained at appellate record pages 37 through 38. This is a declaration that he filed sometime around June of 2011? Yes. Okay. Now, why, when he was deported in June of 2007, five years earlier, didn't it dawn on him that he'd been seriously ill-served by his lawyer? Yes, Your Honor. I mean, this is a facts and circumstances analysis. The record on the first ---- It's a what? I'm sorry. Facts and circumstances analysis for equitable tolling. And so keeping in mind the factual record before the Board and before this Court, the record on the first motion to reopen states that he wasn't aware he had a claim until March 2011 when he was advised by Mr. Kersey. Further, as explained by Mr. Beza himself proceeding in pro se capacity on his second and third motions to reopen, there were misrepresentations by his appellate counsel, Ms. Hanna, that led him to believe that he remained lawfully present in the United States and that everything was fine and his case was being handled. Ms. Hanna's ---- This is a phone conversation that he had with her while he was in Mexico? Yes. So he'd already been deported. So he knows things weren't going well. He wasn't there on a vacation. He had been deported. Right. And he called Ms. Hanna's offices and was advised that he could legally reenter the country using his green card or his lawful permanent resident card. And the record states that he, in fact, did so. He reentered using his lawful permanent resident card. Thereafter, he repeatedly attempted to contact Ms. Hanna and was repeatedly reassured that there was no need for a meeting, that Ms. Hanna was handling his case, and he continued to work and live in the country and assumed that his case was being handled by Ms. Hanna. And, Your Honor, other Ninth Circuit cases have applied equitable tolling in circumstances where, unlike Mr. Beza's case, petitioners were aware they had lost their appeal. The record in this case is that Mr. Beza was never informed by Ms. Hanna that he had even lost his appeal. But in other cases where petitioners knew even that they had lost their appeal and where INS agents came to their house to deport them, even under those circumstances, the Ninth Circuit has applied equitable tolling where it was apparent that the petitioners continued to rely on the advice of their counsel. And the particular case that I was referring to there is Rodriguez-Larez v. INS. I can give you the site if you require it. So under the second factor, did Mr. Beza continue to pursue relief and rely on advice of counsel? He did. He retained Attorney Hanna. However, Ms. Hanna filed a worthless appeal on Mr. Beza's behalf. She completely failed to address the immigration judge's finding that Mr. Beza's application for cancellation of removal was untimely and deemed abandoned. As a result, on his appeal, the Board affirmed the immigration judge's order of removal. This is a clear and obvious case of ineffective assistance of counsel by Ms. Hanna. Even the Board, in its August 2011 opinion, denying Mr. Beza's first motion to reopen, was struck by Ms. Hanna's deficient representation, noting that the only factor preventing Mr. Beza from applying for cancellation of removal was Ms. Hanna's failure to address this very issue on appeal. The Board stated that it was unclear why Mr. Beza would not, therefore, pursue a claim of ineffective assistance of counsel against Ms. Hanna. Was it – I'm trying to remember which of the attorneys the immigration judge said was an excellent attorney. Was that, in this case, that Ms. Hanna was an excellent attorney and should be relied on by Mr. Beza? No, I don't believe that any of the immigration judges were. There was one hearing, maybe it's in another immigration case, where a clearly deficient attorney, the immigration judge affirmatively said they were confident and should be relied upon. I don't recall that in this case. It is true that Ms. Hanna was successful on appeal in convincing the Board that Mr. Beza had not been convicted of an aggravated felony, but she completely failed to address the untimely filed application for relief. Ms. Miller, let me ask you this. Suppose we agree with you. What exactly do you want us to do? Where does this case go from here if you win? I think the case goes back to the immigration judge so that Mr. Beza has an opportunity to file an application for cancellation of removal and state his case. So go back to the BIA with directions to entertain his motion to reopen? To let him – again, I'm not sure I understand what you want us to do. You're not seeking a determination of ineffective assistance of counsel, which was not addressed by any lawyer and which he was in effect barred from raising? Yes. I mean, certainly the case could be remanded to the Board with instructions to consider the merits of his underlying claims for ineffective assistance of counsel and equitable tolling and to reopen his removal proceedings. The proceedings should be reopened, and he should have an opportunity to file for the relief to which he was entitled. He's eligible for cancellation of removal? At the time that – If Subin Dipinto had been confident in a timely file of the cancellation for removal, he would have been eligible for cancellation of removal. Yes. In fact, the Board effectively concedes that he's stated more than plausible grounds for relief on that. They say that, you know, this is why they were so puzzled, why he wouldn't pursue ineffective assistance against Ms. Hanna, because but for her error in failing to address the untimely filing of the application, he would have been eligible or he was – he could have filed an application for cancellation of removal. And we've argued in our papers, and I believe it's uncontested, that at that time he was eligible for the underlying relief that was requested. By the way, I was right. I just had the wrong incompetent counsel. But ER 309, the judge says, well, the respondent is represented by competent counsel. I'm sure he's taken into consideration all these facts and his request to reserve appeal is going to be honored. So he did sort of give the imprimatur of competence to DePinto, so that would be a reason why Beza wouldn't have thought that DePinto was incompetent at the time. Certainly, and I think that combined with Ms. Hanna's failure to spot or raise the issue, I mean, this is an immigration specialist. This is his counsel who he's entitled to rely on completely fails to raise that issue. Well, worse than that, she pushes him off. Right. She doesn't respond to him at all. And she, you know, she never informs him that he lost his appeal, and compounding her error, she doesn't file a motion to reopen based on the changed circumstance that, you know, with the reversal of the IJ's erroneous finding concerning the aggravated felony that Mr. Beza was entitled to the underlying relief he was requesting. I see you're down to a minute and 40 seconds or so. Okay. Do you want to save some time? Oh, yes. I'd like to reserve three minutes. Well, you're already down. Okay. So then I'll sit down. We're past that now. Okay. Well, you've got about a minute and a half. Okay. Thank you, Ms. Miller. Morning. Good morning. I am Blair O'Connor on behalf of the Attorney General. Your Honors, this Court should deny all three consolidated petitions for review in this case because all three suffer from the same fatal defect, and that is petitioner's failure to demonstrate due diligence during the nearly four-year time period that he seeks to have equitably told before the Board. Now, importantly, all three of the motions sought to reopen the same Board decision, which was the initial June 15, 2007, decision. A timely motion to reopen would have had it been filed by September 13, 2007. Because the first motion was not filed until June 1, 2011, it is undisputed all three were untimely. Furthermore, because the evidence fails to show that petitioner actively pursued his case during this nearly four-year period that he seeks to have equitably told, the Board's decision was definitely within its considerable discretion in refusing to equitably told that limit. Now, it is important to know, I think it's very important to know, what are the undisputed facts with respect to the due diligence inquiry. And there, Your Honors, the only facts that you may consider is this, is the petitioner's affidavit that was submitted in support of the first motion, and that's at AR 158-60. Importantly, everything else, statements of this counsel in the motion, that is not evidence. It's very clear from case law in this Court and Supreme Court that statements of counsels and pleadings are not evidence. Furthermore, petitioner's statements in his second and third motion to reopen, which are filed pro se, are also not evidence. The only evidence that would be undisputed would be if he submitted declarations in support of that second and third motion, and he did not. So looking at the only evidence of undisputed facts, and that's important because the criminal review bar is implicated in this case. And the exception, the criminal review bar, 1252A2C, is implicated here. I thought he wasn't convicted of an aggravated felony. He still has. He's still convicted of a controlled substance violation, which he has conceived, Your Honor. Does that bar cancellation of removal? It does not, but it does trigger the criminal alien review bar. So this Court can only look at legal or constitutional issues or mixed questions that are recognized in Ramadan. Isn't ineffective assistance of counsel a constitutional defense? It is, Your Honor. But here the issue is due diligence. This was denied on, it's fair to exercise due diligence. The board never really addressed. Right. But what was the absence of due diligence with respect to effective assistance of counsel? Isn't that the issue? Yes, Your Honor. But again, looking at the only ---- What should he have known constituted ineffective assistance of counsel? You and I know it clearly when we look at it. Sure, Your Honor. A number of things. First of all, he was in the courtroom and understood that Attorney DePinta had failed to timely file the cancellation application. But that's where equitable estoppel comes into play because that was the very proceeding where the I.J. said ---- That's right. ----that your counsel's competent. He knows what he's doing. So that's an affirmative misrepresentation by the government, which I think under so-called Gonzales forms the basis for a claim of equitable estoppel. Well, he's never argued equitable estoppel. That claim is not before the court, Your Honor. It's never been briefed. No, but it's evidence. To further compound the evidence that he didn't know that it was ineffective assistance. Sure, Your Honor. But again, he also listened to the I.J. render his oral decision. And that decision clearly notes that the cancellation application was deemed abandoned because of counsel's failure to file it within the filing deadline. I understand. So that gets us to why he lost his direct appeal, right? It gets us to why the cancellation application was deemed abandoned by the I.J. Right. And that's affirmed on direct appeal to the V.I.A. Yes, Your Honor. Then he brings a motion to reopen after that. Sure, Your Honor. He's got an excuse for why he's late. Well, again, looking at his affidavit, which is the only evidence that we can look at for due diligence, all that affidavit says is that in an unspecified time, he did learn of the board's June 2007 decision dismissing his appeal. The only other thing mentioned in it is that in November of 2010, he retained Attorney Kersey. That's it. That's the only evidence. Everything else about his phone calls to Attorney Hanna, all that comes within motions. Let's say that's not sufficiently specific. Okay, let's buy it. Then he brings another motion to reopen, and he gets specific. He talks about the phone call and is the lawyer. But that's in a motion, Your Honor. It's not in a support. There's no declaration that would be uncontested, disputed, found. This is in his own pro se motion. That's right. What is the difference between that and his own declaration? Because the declaration is sworn, obviously. No, no, they're not sworn. But it was so obvious that it was ineffective assistance of counsel. It's not even a factual issue that the lawyer failed to do what was essential. Yes, Your Honor. I mean, we can see that Attorney DePenza did not file the application. That he was ineffective. Yes, Your Honor. But, again, from that time to the present. That's no longer a factual question. Understood, Your Honor. Do you concede that Attorney Hanna was ineffective? Well, she did get the board to reverse the aggravated felony determination. Right. But the board itself says we don't understand why she didn't contest the issue of delay. Yes, Your Honor. But, again. And that you should maybe consider perfecting a claim against her. Yes, Your Honor. But, again, again. It strikes me. It's like this thing, this whole thing. And we all know, sitting here in this room, that this man, who at the time was eligible for a form of relief, was serially represented by deficient counsel. And that's why we're here. And yet the board has never deigned to reopen this and look at the merits of this claim. And you may be right. He may now have lost everything, both because he was deported and he came back. And I don't know how the board would treat that, given the circumstances, and because of the controlled substance and or because of the controlled substance abuse. But you don't think that he should at least have a chance to have the merits of this thing heard? One point, Your Honor. Going to the statutory eligibility for cancellation, the IJ did make an alternative merits determination. You know, assuming that the application had been timely filed. Based on the assumption that he was convicted of an aggravated felony, which he was not. He was not. But it depends on who has the burden of proof. The IJ said assuming that the government has the burden of proof for purposes of removability. It was an inconclusive record before the IJ. You cannot tell from conviction records. Well, then shouldn't the prosecutor have gotten the conviction records and proceeded under the modified? Well, the IJ entered his ruling on that date. They had the records that were available. And so as an inconclusive record, the IJ noted, for purposes of removability, the government loses. At that time, that wasn't the rule. It's now the rule. But at that time, it wasn't the rule. Correct, Your Honor. But, again, in Young, this is court seen on Bonk, overturned Sandoval Lua and said that now. That was last year or something. What's that, Your Honor? That was recently. Yes, Your Honor. But, again, I'm just making the point that if the case were to go back, remand would be futile, because we do have an inconclusive record. And as an applicant for relief, it's his burden to show that he was not an aggravated felon. Not if we remanded on an open record. Well, correct, Your Honor. But his attorney conceded at the time that the only thing he could introduce would be his own. That's not evidence. That was your first point. But the attorney said this is evidence, right? Well, the IJ asked him, if you have the burden of proof, what can you show me? He's like, all I can have is have the alien testify. Plus, it's by an incompetent counsel who's making representations. Yes, Your Honor. But, again, I mean, he said the only thing I would be able to do is put my client on the stand, which obviously, as you correctly noted, I can't consider that. That's going beyond the record. You would need conviction documents to show that this was not an aggravated felony. Well, again, he was ineffective in not doing that. There's no dispute that he was not convicted of an aggravated felony and that he had ineffective assistance of counsel throughout. We would say that that is not undisputed. It's an inconclusive record, so we don't know one way or the other, Your Honor. We don't know if he is. We don't know if he isn't. But it's not correct to say it's indisputed that he's not because we have an inconclusive record. Let me ask you, his second motion to reopen is written by himself, right, not by a lawyer? Yes, Your Honor. If we were to say that since it's written by him, that's the equivalent of a declaration, where does that get us? Well, then you could consider the statements he indicated. Right. And then what are the significant statements are that he was told by the lawyer you can come back legally and all this other stuff? Sure. And that he said that he contacted her once from Mexico, was told by the assistant you can come back in. Once he came back in, the only thing that's in there is that he tried to set up a meeting with her, and he was unsuccessful in doing so. And then we have a three-year gap. He was told by her assistant that she's handling it, she's taking care of it. But he also admits that he knew there was nothing pending. And we have a three-year and a half-year gap. That contrasts this case from all the other cases where this Court has equitably told a time limit. We don't have something that significant. In the Mejia case, he told a seven-year period, but that was unique because that involved a NACARA petition, which was very delayed. The alien knew it was pending. His WISE petition was ultimately granted, and he was derivative on hers. That's the only decision where we have that length of a time period. Let me ask you the same question I asked Ms. Miller. Suppose we were to agree with her, and I'm not saying we will, but if we do, what relief would he be entitled to from us? What should we do? Well, again, Your Honor, our government's position would be that a remand would be futile for two reasons. Number one, again, after this Court decided young. You're saying we shouldn't rule in her favor? Yes, Your Honor. Okay, I'm saying let's assume we are going to rule in her favor. What should we do? What would be the relief that we should grant? I guess it would be a remand to the board. To the board, not to an IDA. To the board to do what? To address the – to adjudicate the motion, you know, not – assuming that it's timely. To adjudicate? The motions assuming that they were timely. What motion? That would be tolling the time period. To adjudicate the motion to reopen? Yes, you know, applying equitable tolling to the time limit. Because the reason all three were denied was on the timeliness ground. Right. Okay, so I just want to be clear. You don't think we ought to do this. But if we disagree with you, what we should do is send it back to the board and say now consider the motion reopened, grant it or deny it, but not because it's untimely. Yes, Your Honor. But this Court has declined a remand when it's recognized that doing so would be futile. And we think it would be futile for two different reasons. Number one, for the young reason, you know, in the case of Rucker I just mentioned. But also because the old order has been reinstated. And so now the reinstatement bars apply. And that all goes back. I mean, that never would have happened if he hadn't gotten incompetent advice from, well, first, DePenta, and second, Hannah. Because he wouldn't have been deported and then come back in thinking that it was okay for him to come back in because his lawyer told him to. I mean, it's like Alice in Wonderland. Yes, Your Honor. Again, you know, I mean, you know, I know this is outside the record, but the evidence regarding the reinstatement I obtained showed that he actually entered not, you know, shortly after talking, allegedly talking to Hannah's assistant, but he entered in 2009, like over a year and a half later, and he crossed unlawfully. Well, shouldn't, I mean, okay, maybe that's the case. I mean, I guess if I were, I don't know which way I'm going to come out yet, but if I were to rule in his favor, I think I would send it back to the board with instructions to go to the IJ and put all these facts in there and do what's right from the beginning. And, you know, setting aside all this ineffective assistance, it just seems wrong for someone to get in so much legal trouble because they're repeatedly represented by ineffective counsel. And the board can straighten it out, or the IJ can straighten it out and take facts. Again, Your Honor, I understand that, you know, obviously he has had some attorneys that have given him purportedly, you know, bad advice, didn't follow the application on time. If, in fact, again, this is, you know, his statement, unsworn, unnotarized, everything, that the assistant said, hey, you can just come back in, and so a year and a half later he did, you know, that would be wrong. But still, at the end of the day, we have someone who sat for three and a half years and did not actively pursue his case, and that's the standard this Court has used for due diligence, actively pursuing the case, going out and consulting with another attorney. Hey, did the other attorney give me bad, you know, incompetent legal advice? He didn't get Attorney Percy until he had been detained by immigration authorities. What about his statement, well, I called the lawyer and she said everything's cool, don't worry about it? Well, we would say that's not reasonable to sit for three and a half years based on that advice, Your Honor. You know, and it doesn't take a law degree to know that, you know, obviously he was deported. He knew the Board had denied his appeal. And to not look into that, why it was denied, for three and a half years, to assert on the basis of an assistant saying, hey, everything's fine, he had nothing pending, that's not reasonable reliance, Your Honor. And that's why we'd argue that this case is different from the other cases where this Court has found due diligence and, as Eck will be told, the time limit. Okay. So based, barring further questions from the Court, we would argue that, you know, if this record fails to demonstrate that Petitioner exercised due diligence during the nearly three and a half year period, he seeks to have Eck be told, and that any remand would be futile because he is now ineligible for cancellation on two separate grounds. Thank you, Your Honor. Thank you, Mr. O'Connor. Ms. Miller, you've got a minute and a half left. Okay. So first of all, with respect to the discussion of the reentry, that is absolutely outside the record. There is no evidence in the record of a conviction for unlawful reentry. Moreover, the allegations regarding Ms. Hanna's advice are uncontested. I mean, we have in the Board's March 19, 2012 decision denying the third motion to reopen, and they state he contends Ms. Hanna did not inform him of the Board's 2007 decision, did not file a motion to reopen his proceedings, and that her office advised him that he could return to the United States shortly after being deported to his native Mexico. What do you think of a remedy of, if you win, remand to the Board with directions to consider the motion to reopen as if it were timely? I think it needs to go all the way back to the immigration judge level. I suppose we don't have the authority to send it back to the immigration judge. We could only deal with the BIA. Let the BIA deal with it however they see fit. Well, I think that in this case ---- Let me ask that question in a slightly different way. What authority do you have that would support a remand to the BIA with instructions to go to the IJ? Is there any authority for that? Yes. I believe that that relief has been granted in prior cases. I think in the Ituri Barria case, but I would have to check on that. What do you care where it goes back? If we send it back and say reconsider it, give it your best effort, but don't toss it out as being untimely. Doesn't that do the job for you? Well, frankly, I'm a little disheartened in light of the record in this case about the Board's willingness to consider the merits of Mr. Bays' case. I mean, it doesn't take much. We have clear and obvious examples of ineffective assistance of counsel at every level of his case, which is why I think it needs to go back to the immigration judge so that he at least can present his application for cancellation of removal. Why don't you, after the hearing, since you're over your time, submit a little note with authority that you say supports a remand all the way to the IJ in some of these circumstances? And Counsel for the Government, if you have contrary authority, would you please submit that? But certainly in the alternative to remand to the Board with instructions to consider the ineffective assistance of counsel, which is obvious, the equitable tolling arguments, which we believe is satisfied. Thank you.
judges: Cedarbaum, Silverman, Wardlaw